UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**FILED**

IN CLERK'S OFFICE
U.S. DISTRICT COURT, E.D.N.Y.

★ SEP 08 2006 ★

**BROOKLYN OFFICE**

_____X

ELIAS NUNEZ,

                    Plaintiff,

          -against-

DENNIS W. HASTY, Warden, MDC-Brooklyn;
MS. MIDDLETON, Medical Supervisor, MDC-Brooklyn;
F. FRANCIN, Medical Director, MDC-Brooklyn;
M.E. RAY, BOP Northeast Regional Director,
Philadelphia, PA; C. SHACKS, BOP Unit Manager,
MDC-Brooklyn; H. WATTS, Administrator,
Bureau of Prisons, Central Office, Washington, D.C.,

                    Defendants.

_____X

**REPORT AND
RECOMMENDATION**

04-CV-1282 (JG)(LB)

BLOOM, United States Magistrate Judge:

          Plaintiff brings this *pro se* action alleging that defendants violated his civil rights under

42 U.S.C. § 1983.[1]  Plaintiff alleges that defendants failed to provide him with proper medical

treatment for an injury he suffered when he slipped and fell in the showers while on work duty at

the Metropolitan Detention Center in Brooklyn, New York ("MDC").  Defendants' Motion to

Dismiss the Complaint was referred to me by the Honorable John Gleeson for a Report and

Recommendation in accordance with 28 U.S.C. § 636(b).  It is recommended that defendants'

motion should be granted in part and denied in part for the following reasons.

---

[1]Plaintiff initially filed this action in the United States District Court for the Southern District of
New York. By order dated March 9, 2004, the instant action was transferred to this district as a
substantial part of the events or omissions giving rise to plaintiff's claims occurred in the Eastern
District. Nunez v. Hasty, No. 04 Civ. 1103 (SHS)(DCF), slip op. at 2-3 (S.D.N.Y. Mar. 9, 2004).

## BACKGROUND

Plaintiff, a federal prisoner born in 1945, is currently incarcerated at FMC Devens in Ayer, Massachusetts. Plaintiff alleges that on March 26, 2001, he was incarcerated at MDC and was assigned to clean the showers at the facility.[2] Compl. ¶ IV. While on work duty that day, plaintiff slipped and fell, injuring the left side of his hip and shoulder area. Id. Plaintiff alleges that he suffered severe pain, externally and internally, since his fall and experiences "numbness and weakness" on the left side of his body. Id. Plaintiff alleges that he was "left with no proper medical attention, treatments, therapy," causing him to be permanently physically disabled and confined to a wheelchair "for the rest of [his] natural life." Id. ¶¶ IV-V. Plaintiff seeks $20,000,000 in damages. Id. ¶ V.

In addition to his complaint, plaintiff submits copies of his grievances filed with the Federal Bureau of Prisons ("BOP") and responses to his requests for administrative remedies, providing details of plaintiff's claims against defendants. Plaintiff alleges that after his accident, he waited five hours before he was examined. Request for Administrative Remedy ("RAR") dated Aug. 15, 2001, attached to Compl. According to plaintiff, defendants took X-rays, determined that he did not have any broken bones, and gave him a wheelchair and pain medication. RAR dated Oct. 11, 2001, attached to Compl. Plaintiff alleges that after he finished his pain medication, he asked for "proper medication," to be seen by a specialist, and for an MRI to be performed. Id.

On December 3, 2001, defendant Dennis W. Hasty responded to plaintiff's grievance,

---

[2]Plaintiff's complaint alleges that his injury occurred on March 26, 2004, Compl. ¶ IV; however, it is clear from the parties' submissions that the incident actually occurred on March 26, 2001.

writing:

> "A medical review panel has reviewed your complaint. Your medical file reveals that you had been seen by our medical staff on several occasions and it was determined that you have received the proper medical care for you condition. The medical review panel determined that it would not recommend an MRI at this time. However, future follow-up appointments will be scheduled to monitor your progress."

Response to Request for Administrative Remedy dated Dec. 3, 2001, attached to Compl.

Plaintiff appealed the denial of his grievance to the BOP, stating:

> "It's true I have been seen by medical staff members in MDC, but because the lack of equipment they can do nothing for me. If they can't heal me, this is not 'appropriate medical treatment' ... Furthermore, the X-rays that was [sic] taken here in MDC do not show any broken bones, but through X-rays you cannot determine any tore legiments [sic] of muscle so they feel as if nothing is wrong with me."

Central Office Administrative Appeal dated Feb. 2, 2002, attached to Compl. Plaintiff was eventually administered an MRI in May 2002, see Declaration of Adam Johnson ("Johnson Decl."), dated July 13, 2004, ¶ 13, but on October 31, 2002, he filed another RAR, requesting a copy of his MRI results and to be re-evaluated by a doctor. This RAR was denied by MDC Warden Michael A. Zenk on November 18, 2002. Response to Inmate Request for Administrative Remedy dated Nov. 18, 2002, attached to Compl. According to Zenk's response, plaintiff was presented with a copy of his MRI results on October 21, 2002, and was told that the medical staff was scheduling an appointment for plaintiff with a neurologist. Id. Plaintiff filed an appeal with the BOP dated March 10, 2003, again requesting a copy of his MRI results and an appointment with a neurologist. Plaintiff's appeal was rejected on March 21, 2003, and by RAR dated August 27, 2003, he informed the BOP that he would file a civil action regarding his allegedly inadequate medical treatment at MDC. RAR dated Aug. 27, 2003, attached to Compl.

In his last RAR, plaintiff wrote:

> "I have been in this wheelchair since 3-26-01, due to the injuries I sustain[ed] when I fell cleaning the showers. At no point during this process has M.D.C. or B.O.P. given me the proper medical treatment I needed. I'm a married 58 year old father of two, who is stuck in a wheelchair and I sometimes feel like a 68 year old man who is, suffering pain. This is my decision concerning this matter."

Id. On September 30, 2003, the BOP rejected plaintiff's August 27, 2003 RAR.

Plaintiff filed the instant action on March 19, 2004. Defendants move to dismiss or in the alternative, for summary judgment.[3] Plaintiff submitted an opposition (Pl. Opp.) to defendants' motion, defendants filed a reply to plaintiff's opposition, and plaintiff filed a sur-reply (labeled traverse). No discovery was conducted in this matter.

## DISCUSSION

A.     Standard of Review

    1.     Motion to Dismiss

A court should only dismiss a complaint pursuant to Fed. R. Civ. P. 12(b)(6) if it appears beyond doubt that the plaintiff can prove no set of facts in support of the complaint that would entitle the plaintiff to relief. See, e.g., Strougo v. Bassini, 282 F.3d 162, 167 (2d Cir. 2002); King v. Simpson, 189 F.3d 284, 286-87 (2d Cir. 1999). The Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. See, e.g., Koppel v. 4987 Corp., 167 F.3d 125, 130 (2d Cir. 1999); Jaghory v. New York State Dep't of Educ., 131 F.3d 326, 329 (2d Cir. 1997). The issue is not whether a plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support his or her

---

[3]Plaintiff was given the requisite notice pursuant to Local Civil Rules 12.1 and 56.2.

claims. See, e.g., Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir. 1995), cert. denied, 519 U.S. 808 (1996). The Court must "confine its consideration 'to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken.'" Leonard F. v. Israel Disc. Bank of New York, 199 F.3d 99, 107 (2d Cir. 1999) (quoting Allen v. WestPoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991)); Hayden v. County of Nassau, 180 F.3d 42, 54 (2d Cir. 1999).

    2.   Summary Judgment

"[I]f matters outside the pleading are presented to and not excluded by the court" on a 12(b)(6) motion, "the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Local Civil Rules 12.1 and 56.2 provide additional protection to parties proceeding *pro se*. Under Local Rule 12.1, "[a] represented party moving to dismiss [under Fed. R. Civ. P. 12(b)(6)] ... against a party proceeding *pro se*, who refers in support of the motion to matters outside the pleading ... shall serve and file the notice required by Local Civil Rule 56.2 at the time the motion is served." The notice required by Local Rule 56.2 informs the *pro se* plaintiff that the defendant has moved for summary judgment, and that the claims asserted in the complaint "may be dismissed without trial" if they fail to respond. The 56.2 notice further advises a *pro se* plaintiff that they may not simply rely on the allegations in their complaint to survive a motion for summary judgment, but must submit evidence, "such as witness statements or documents, countering the facts asserted by the defendants and raising issues of fact for trial."

Local Rule 12.1 is strictly construed. In the Southern and Eastern Districts, a motion

5

plaintiff has been given "unequivocal notice." Scott v. Gardner, 287 F. Supp. 2d 477, 485

(S.D.N.Y. 2003) (quoting Beacon Enterprises, Inc., v. Menzies, 715 F.2d 757, 767 (2d Cir.

1983)). Additionally, the Second Circuit requires the district court or the moving party to advise

*pro se* plaintiffs of the consequences of failing to respond to a motion for summary judgment.

Irby v. New York City Transit Auth., 262 F.3d 412, 414 (2d Cir. 2001) ("In the absence of such

notice or a clear understanding by the *pro se* litigant of the consequences of failing to comply

with Rule 56, vacatur of the summary judgment is virtually automatic."). Here, defendants'

motion did contain the requisite notice under Local Civil Rules 12.1 and 56.2 and therefore the

Court shall consider this motion as one for summary judgment.

Summary judgment is appropriate if there is no genuine material issue of fact requiring a

trial and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "A

dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could

return a verdict for the nonmoving party.'" Lazard Freres & Co. v. Protective Life Ins. Co., 108

F.3d 1531, 1535 (2d Cir. 1997) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

(1986)); see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87

(1986); Celotex Corp. v. Cadrett, 477 U.S. 317, 322 (1986). "The trial court's function in

deciding such a motion is not to weigh the evidence or resolve issues of fact, but to decide

instead whether, after resolving all ambiguities and drawing all inferences in favor of the non-

moving party, a rational juror could find in favor of that party." Pinto v. Allstate Ins. Co., 221

F.3d 394, 398 (2d Cir. 2000).

"When a motion for summary judgment is made and supported ... , an adverse party may

not rest upon the mere allegations or denials of the adverse party's pleading, but ... must set

forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see

6

not rest upon the mere allegations or denials of the adverse party's pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see Matsushita, 475 U.S. at 586-87 (1986). In other words, the non-moving party must provide "affirmative evidence" from which a jury could return a verdict in its favor. Anderson, 477 U.S. at 257. "Conclusory allegations, conjecture, and speculation ... are insufficient to create a genuine issue of fact." Niagra Mohawk Power Corp. v. Jones Chemical, Inc., 315 F.3d 171, 175 (2d Cir. 2003) (quoting Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir. 1998)). Moreover, "[t]he 'mere existence of a scintilla of evidence' supporting the non-movant's case is also insufficient to defeat summary judgment." Id. (quoting Anderson, 477 U.S. at 252); but see Pinto, 221 F.3d at 398 ("[s]ummary judgment should not be granted where the record discloses facts that could reasonably support a jury's verdict for the non-moving party") (citation omitted).

Where, as here, a party is proceeding *pro se*, the Court is obliged to "read his supporting papers liberally, and will interpret them to raise the strongest arguments that they suggest." Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994). This is especially true in the summary judgment context when a pro se plaintiff's claims are subject to a final dismissal. See Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988) ("Special solicitude should be afforded *pro se* litigants generally, when confronted with motions for summary judgment.").

B.      The Prisoner Litigation Reform Act

The Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust available administrative remedies before bringing civil rights or prison conditions claims to federal court. 42 U.S.C. § 1997e(a). The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege

excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). Failure to comply with and exhaust administrative remedies prior to commencing a civil rights action generally requires the dismissal of such an action without prejudice. See Neal v. Goord, 267 F.3d 116 (2d Cir. 2001), overruled on other grounds by Porter, 534 U.S. 516; see generally McCoy v. Goord, 255 F. Supp. 2d 233 (S.D.N.Y. 2003) (PLRA requires inmates to complete the entire grievance process before filing federal suit). In 2003, the Second Circuit made clear that, although a prisoner must exhaust his administrative remedies prior to bringing an action in federal court, this is not a jurisdictional requirement. See Richardson v. Goord, 347 F.3d 431, 434 (2d Cir. 2003) ("we ... conclude that exhaustion [of administrative remedies under the PLRA] is not jurisdictional").

The Supreme Court has explicitly stated that it will not read any exceptions to the statutory exhaustion requirement where Congress has provided otherwise. Booth v. Turner, 532 U.S. 731, 741 n.6 (2001). However, this Circuit has recognized that in some cases "special circumstances" may justify a prisoner's failure to comply with administrative requirements. Brownell v. Krom, 446 F.3d 305, 312 (2d Cir. 2006) (citing Giano v. Goord, 380 F.3d 670, 675-76 (2d Cir. 2004)). Inmates have overcome the complete exhaustion requirement by demonstrating that they made a reasonable attempt to grieve the matter, but were thwarted by defendants' actions. See, e.g., O'Connor v. Featherstone, 01 CV 3251, 2003 WL 554752, at * 3 (S.D.N.Y. Feb. 27, 2003) (where plaintiff's attempts to comply with the grievance appeal process were hampered by defendants' conduct, dismissal for failure to exhaust is not warranted); Indelicato v. Suarez, 207 F. Supp. 2d 216, 219 (S.D.N.Y. 2002);

The BOP grievance process is outlined in sections 542.10-542.19 of Title 28 of the Code

of Federal Regulations ("C.F.R."). Pursuant to this grievance procedure, inmates should first attempt to informally resolve any issue with facility staff. 28 C.F.R. § 542.13. Absent an informal resolution, an inmate must submit a formal written Administrative Remedy Request on a BP-9 form. 28 C.F.R. § 542.14. An adverse decision is appealed first to the Regional Director, through a Regional Administrative Remedy Appeal, which is known as a BP-10, and then to General Counsel, through a BP-11 form. 28 C.F.R. § 542.15.

Defendants must demonstrate an inmate's failure to exhaust administrative remedies. See Mojias v. Johnson, 351 F.3d 606, 610 (2d Cir. 2003) (the court must verify from a "legally sufficient source" the availability of an administrative remedy); Sedney v. Hasse, No. 02 Civ. 2583, 2003 WL 21939702 (S.D.N.Y. Aug. 12, 2003) (defendant bears the burden to demonstrate plaintiff failed to exhaust administrative remedies). Here, defendants argue that all but the following two of plaintiff's claims should be dismissed based on his failure to exhaust—(1) that his requests for an MRI were ignored and (2) that defendants failed to arrange an examination with a specialist for him. According to the Declaration filed by Adam Johnson, BOP Staff Attorney at MDC, these two claims were the only claims contained in plaintiff's grievance to the BOP, assigned case number 252708, which plaintiff completely exhausted. Johnson Decl. ¶ 14. Furthermore, defendants argue that because defendant Stephanie Middleton, MDC Health Services Administrator, only began working at MDC after plaintiff completed the grievance procedure for case number 252708, she was not personally involved in any constitutional violation stemming from this grievance. Defendants' Memorandum of Law ("Def. Mem.") at 7.

Plaintiff's opposition to defendants' motion asserts that the Court "should know that plaintiff has exhausted all his administrative remedies including filing Federal Tort claims, which were all denied due to high gravity of B.O.P. officials deliberate indifference, show of authority

and negligence of duties, and they were all tainted biased ... ." Pl. Opp. ¶ 7. However, apart

from copies of grievances filed with his complaint, plaintiff does not offer any other evidence to

counter defendants' assertion that all but two of his instant claims are barred for failure to

exhaust his available administrative remedies.

In his BP-9 form dated October 29, 2001, which was assigned case number 252708,

plaintiff writes:

> "On March 26, 2001 at around 9 a.m. while ... cleaning the showers, I had slipped
> on the wet floor hurting myself after waiting 5 hours ... After the results, no bones
> broken ... I was finally sent to the medical office. They took 3 x-rays of my left
> shoulder and 1 of my lower back. They presented me with 15 pills to be taken 3
> times a day and was also given a wheelchair. I am a 56 yr. old man and I am still
> suff[e]ring severe pain in my lower back[,] left shoulder and my neck caused by
> the March accident. The pain is keeping me still in a wheelchair. I have difficulty
> sleeping and doing the daily normal activity after the medication finished. I wrote
> several cop-outs, sick-call to medical office, asking for proper medication, asking
> to be[] seen by a specialist, and to be sent for an MRI examination to determine
> the extent and the nature of my injur[ie]s. By not having a reply to my cop-outs, I
> had no choice but to write a BP-8."

RAR dated Oct. 29, 2001.[4] Plaintiff pursued this grievance by filing both BP-10 and BP-11

forms, in which he continued to complain of his lack of medical treatment, the worsening of his

condition, and the BOP's failure to arrange an MRI and an examination by a specialist. See

Johnson Decl., Ex. B. Based on the record, plaintiff fully exhausted only one grievance, case

number 252708, through the BOP grievance process. As such, plaintiff is limited to those claims

in this action against those individuals who were involved in the events giving rise to his

grievance. See, e.g., Sanchez v. Fischer, No. 03 Civ. 4433, 2005 WL 1021178, at *4 (S.D.N.Y.

May 2, 2005) (dismissing inmate's claim against physician where, "[d]espite his numerous

---

[4]Plaintiff did not submit a copy of this BP-9 form. Rather, the document was attached as Exhibit
B to Adam M. Johnson's Declaration.

[administrative] submissions and appeals, plaintiff made no allegations against [the physician] and made no claims that [the physician] failed to treat him properly"); Luckerson v. Goord, No. 00 Civ. 9508, 2002 WL 1628550, at *2 (S.D.N.Y. July 22, 2002) (finding that litigating a federal suit based on allegations that were never made at the administrative level would make a "mockery of the exhaustion requirement").

Although the BP-9 form plaintiff filed for case number 252708 specifically requests an MRI and an examination by a specialist, his grievance was not limited to those issues. Although lacking in detail, plaintiff's BP-9 does complain of inadequate medication, inadequate treatment and a worsening of his condition. To determine whether this grievance adequately alerted defendants of the nature of his complaint, the Court is guided by the Second Circuit's ruling in Johnson v. Testman, 380 F.3d 691 (2d Cir. 2004), which held that if prison regulations do not prescribe any particular content for inmate grievances:

> "a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought. As in a notice pleading system, the grievant need not lay out the facts, articulate legal theories, or demand particular relief. All the grievance need do is object intelligibly to some asserted shortcoming."

Johnson, 380 F.3d at 697. The court in Johnson added that "[i]n order to exhaust, therefore, inmates must provide enough information about the conduct of which they complain to allow prison officials to take appropriate responsive measures." Id.

Plaintiff's instant complaint should not be limited to his request for an MRI and to see a specialist. Plaintiff's fully-exhausted grievance gave the prison notice of plaintiff's claim of inadequate medical care and his deteriorating physical condition. Plaintiff's submissions are sufficient at this stage to defeat defendants' motion on this issue. Nevertheless, defendants' motion to dismiss should be granted with regard to defendant Middleton, as she was not

11

employed at MDC at the time of the events giving rise to plaintiffs grievance.[5] Accordingly, it is recommended that defendants' motion to dismiss plaintiff's claims against defendant Middleton should be granted, as she was not employed at MDC at the time at issue in plaintiff's complaint and she was not mentioned in plaintiff's administrative grievances as required by the PLRA. Defendants' motion to dismiss the remainder of plaintiff's claims based on his failure to exhaust should be denied.

C.      Bivens Claims

As plaintiff complains that his rights were violated by persons acting under color of federal law, his complaint is construed as a claim under Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388, 397 (1971); Bivens claims are treated as analogous to claims under 42 U.S.C. § 1983 and incorporate the same law.  See Butz v. Economou, 438 U.S. 478, 504 (1978) (no distinction for purposes of immunity law between Bivens and § 1983 claims); Polanco v. U.S. DEA, 158 F.3d 647, 653 (2d Cir. 1998) (same statute of limitation applies to Bivens and § 1983 claims); Tavarez v. Reno, 54 F.3d 109, 110 (2d Cir. 1995) ("federal courts typically incorporate § 1983 law into Bivens actions").

1.      Personal Involvement

In order to state a civil rights claim, plaintiff must allege that he was deprived of his rights secured under the Constitution and laws of the United States by a defendant acting under color of law.  See Flagg Bros. Inc. v. Brooks, 436 U.S. 149, 155-57 (1978); Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970); Dwares v. City of New York, 985 F.2d 94, 97 (2d Cir. 1993).  It is well settled in this Circuit that "personal involvement of defendants in alleged

---

[5]Even if Middleton had been named in plaintiff's grievances and had been employed at MDC at the time of the underlying events, the claims against her should still be dismissed.  As an employee of the Public Health Service, she is immune from suit.  42 U.S.C. § 233(a).

12

constitutional deprivations is a prerequisite to an award of damages under § 1983." Provost v. City of Newburgh, 262 F.3d 146, 154 (2d Cir. 2001) (citations omitted).

Apart from Stephanie Middleton, plaintiff names the following defendants: Dennis W. Hasty, MDC Warden; Francis M. Francin, MDC Medical Officer; M.E. Ray, BOP Regional Director of the Northeast Regional Office; Clemmet Shacks, MDC Unit Manager; and Harrell Watts, BOP National Inmate Appeals Administrator.[6] Defendants argue that plaintiff's claims against defendants Hasty, Ray, Shacks and Watts should be dismissed, as "not one of them had any personal involvement in the provision of medical treatment to Plaintiff or in the alleged deprivation of Plaintiff's constitutional rights." Def. Mem. at 8. Defendants continue, "in fact it appears that defendants Hasty, Shacks, Ray, and Watts were named in this action merely because of their involvement in the BOP's responses to Plaintiff's requests for administrative remedies and appeals, as opposed to any involvement in the facts underlying Plaintiff's claims." Id. at 9. However, personal involvement may be found when a defendant participates in responding to an inmate's grievance.

In Johnson v. Wright, 234 F. Supp. 2d 352 (S.D.N.Y. 2002), the court held that while "a mere letter to an official" does not "impose supervisory liability, ... [p]ersonal involvement will be found ... where a supervisory official receives and acts on a prisoner's grievance or otherwise reviews and responds to a prisoner's complaint." Id. at 363. Plaintiff attaches to his complaint responses to his grievances by Hasty, Shacks and Watts, but he does not include any response from defendant Ray. See Compl., Exs. However, defendant Ray's declaration alleges that his "only involvement with the claims asserted by plaintiff relates to the BOP's response to

---

[6]The Court relies on defendants' declarations for their correct job titles rather than the titles plaintiff listed in the caption.

plaintiff's Regional Administrative Remedy Appeal." Declaration of M.E. Ray, dated July 2, 2004, ¶ 3. Since plaintiff has not had the opportunity to conduct discovery and construing the motion and pleadings in the light most favorable to plaintiff, it is recommended that defendants' motion to dismiss defendants Hasty, Shacks, Ray and Watts at this juncture for no personal involvement should be denied without prejudice.

    2.    <u>Deliberate Indifference</u>

The Eighth Amendment prohibits the infliction of "cruel and unusual punishment" on those convicted of crimes, including punishments that "involve the unnecessary and wanton infliction of pain." <u>Gregg v. Georgia</u>, 428 U.S. 153, 173 (1976). The Eighth Amendment also applies to the provision of medical care to inmates. <u>See</u> <u>Estelle v. Gamble</u>, 429 U.S. 97, 103 (1976) ("We therefore conclude that deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain'"). Thus, to establish an unconstitutional denial of medical care, a prisoner must prove "deliberate indifference to [his] serious medical needs." <u>Id.</u> at 104; <u>see</u> <u>Farmer v. Brennan</u>, 511 U.S. 825, 828 (1996). There is both an objective and a subjective component to a deliberate indifference claim. Plaintiff bears the burden to demonstrate that his deliberate indifference claim satisfies both the objective and subjective requirements.

    a. <u>Serious Medical Need</u>

"Objectively the alleged deprivation must be 'sufficiently serious,' in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." <u>Hathaway v. Coughlin</u>, 99 F.3d 550, 553 (2d Cir. 1996) (citation omitted). A serious medical need arises where "the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." <u>Chance v. Armstrong</u>, 143 F. 3d 698,

702 (2d Cir. 1998) (internal quotations marks and citation omitted).

Plaintiff alleges that as a result of defendants' deliberate indifference, he suffers from severe back pain, which has confined him to a wheelchair. Plaintiff was transferred to FCI Loretto in Pennsylvania on September 2, 2003, and on November 17, 2003, a neurosurgeon employed at Allegheny Brain and Spine Surgeons examined plaintiff and prepared a report. See Johnson Decl. ¶ 2; Declaration of Francis M. Francin ("Francin Decl."), dated July 9, 2004, Exs. The neurosurgeon writes;

> "Progressive weakness-numbness left side, probably secondary to cervical
> spondylotic myelopathy ... Mr Nunez deserves a cervical CT myelogram. If
> indeed there is significant cervical cord compression on the left, then he should be
> offered a decompressive procedure to keep him from getting worse."

Id. Plaintiff also submits radiology reports prepared by doctors who examined him on March 2 and May 20, 2004, diagnosing him with "advanced multilevel degenerative disc disease," "canal stenosis," "cord impingement," and "probable nerve root impingement." See Pl. Opp., Exs. Although these reports were prepared after plaintiff was transferred from MDC, they support his claims that he suffered from a sufficiently serious condition subsequent to his fall on March 26, 2001 at MDC. "Severe back pain, especially if lasting an extended period of time, can amount to a 'serious medical need' under the Eighth Amendment." Nelson v. Rodas, No. 01 Civ. 7887, 2002 WL 31075804, at *14 (S.D.N.Y. Sept. 17, 2002). See Farraday v. Lantz, No. 03-CV-1520, 2005 WL 3465846, at *5 (D. Conn. Dec 12, 2005) (persistent "back pain caused by herniated, migrated discs [and] sciatica" was a serious medical need); Veloz v. State of New York, 339 F. Supp. 2d 505, 522-24 (S.D.N.Y. 2004) (spinal condition that included spondylosis was a serious medical need). Thus, plaintiff has established the existence of a serious medical need and satisfies the objective component of his deliberate indifference claim.

b. Culpable State of Mind

With regard to the subjective component, plaintiff must demonstrate that the defendant "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. Inadvertent or negligent failure to provide adequate medical care does not rise to the level of deliberate indifference. Estelle, 429 U.S. at 105-06. "Allegations of medical malpractice or negligent treatment are insufficient to state a claim under § 1983." Id. ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner"); Bryant v. Maffucci, 923 F.2d 979, 983 (2d Cir. 1991). However, consciously disregarding an inmate's legitimate medical needs is not "mere medical malpractice." Harrison v. Barkley, 219 F.3d 132, 139 (2d Cir. 2000).

Defendants dispute that plaintiff's condition was caused by his fall on March 26, 2001 and the lack of treatment at MDC, arguing that his medical problems are degenerative in nature. See Def. Mem. at 11-12, n. 2; Francin Decl. ¶ 14. The issue, however, is not what caused plaintiff's medical problems, but whether defendants exhibited deliberate indifference to plaintiff's medical condition.

With regard to plaintiff's claims concerning his request for an MRI and to be seen by a specialist, it cannot be said that defendants were deliberately indifferent to his serious medical needs. These claims amount to a disagreement about the proper course of treatment that cannot sustain an Eighth Amendment claim:

> "[T]he question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does no represent cruel and unusual punishment. At most it is medical malpractice ... ."

Estelle, 429 U.S. at 107. See Nelson, 2002 WL 31075804, at *14-15 (no Eighth Amendment claim where defendants refused prisoner's request for a consultation with an outside physician); Fulmore v. Mamis, No. 00 Civ. 2831, 2001 WL 417119, at *8-9, n. 26 (S.D.N.Y. Apr. 23, 2001) (physician's failure to order CAT scan or orthopedic shoes ... reflected "at most ... a difference in opinion as to [prisoner's] medical treatment rather than any deliberate indifference to [prisoner's] medical needs"). Accordingly, defendants' motion to dismiss plaintiff's claims concerning his request for an MRI and to be seen by a specialist should be granted.

Plaintiff's remaining claims concern his allegations that defendants failed to adequately treat his back pain, causing his condition to deteriorate and his confinement to a wheelchair. Defendants submit medical records showing the numerous occasions plaintiff was examined by BOP medical professionals. See Francin Decl., Exs. Defendant Francin states: "While at MDC, Nunez ... was routinely treated by me and three other medical doctors who worked at MDC for hypertension, diabetes, eczema, skin infection of the lower extremity, and other chronic health conditions." Id. ¶ 3. As described above, plaintiff subsequently saw radiology specialists on March 2 and May 20, 2004, who further diagnosed his condition. See Pl. Opp., Exs.

While the record demonstrates that plaintiff was seen and examined by BOP medical professionals and outside specialists, the record does not reflect whether plaintiff was given any treatment or therapy by defendants in the years following his accident in order to ameliorate his condition and decrease his pain. When viewed in the light most favorable to plaintiff, the record evidences more than a disagreement between plaintiff and defendants over his medical condition and the best course of treatment for that condition. Plaintiff has alleged sufficient facts to survive defendants' motion for summary judgment. At this nascent stage, without the benefit of

17

discovery, plaintiff "is entitled to offer evidence to support [his] claims." <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974).

Plaintiff's allegations sufficiently allege that defendants failed to treat his back pain in the more than two years he was incarcerated at MDC after the March 26, 2001 incident. Although an isolated failure to provide medical treatment for a period of time, without more, is generally not actionable, if "the surrounding circumstances suggest a degree of deliberateness, rather than inadvertence in the failure to render meaningful treatment" then plaintiff could prevail. <u>Gil v. Mooney</u>, 824 F.2d 192, 196 (2d Cir. 1997); <u>see also</u> <u>Harrison</u>, 219 F.3d at 136-37 ("A decision to leave a condition untreated will be constitutional or not depending on the facts of the particular case"). Liberally construed, plaintiff's complaint states that although defendants saw him over the two-year period after the March 26, 2001 fall, their failure to treat plaintiff's pain led him to be wheelchair bound, reflecting "an act or a failure to act ... that evinces a conscious disregard of a substantial risk of serious harm." <u>Hathaway</u>, 99 F.3d at 553 (internal quotation marks and citations omitted). The radiology reports from 2004, submitted as part of plaintiff's opposition, <u>see</u> Pl. Opp., Exs., demonstrate that plaintiff suffered a serious back condition which may have been mitigated, or his pain ameliorated, by treatment while he was incarcerated at MDC.

Accordingly, because the Court "cannot say at this stage that it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle him to relief" dismissal under Rule 12(b)(6) is inappropriate. <u>Chance</u>, 143 F. 3d at 704 (internal quotation marks and citations omitted). <u>See</u> <u>Courtenay Communications Corp. v. Hall</u>, 334 F.3d 210, 217 (2d Cir. 2003) (vacating the district court's granting of a motion to dismiss as key determination was premature and turned on questions of fact); <u>Taylor v. Vermont Dep't of Educ.</u>, 313 F.3d 768,

793 (2d Cir. 2002) (ruling on qualified immunity defense was premature where issue "turns on factual questions that cannot be resolved at [the motion to dismiss stage]"); Cortese v. Edge Solution, Inc., No. 04-CV-0956, 2005 WL 1804472, at *6 (E.D.N.Y. July 28, 2005) (denying defendant's premature motion to dismiss, as plaintiff's "allegations must be accepted as true on a motion to dismiss"); Allojet PLC v. Vantage Assocs., No. 04 Civ. 5223 (SAS), 2005 WL 612848, at *10 (S.D.N.Y. Mar. 15, 2005) (motion to dismiss denied as it would be "premature to dismiss on the basis of defendants' factual presentation"). Moreover, defendants' motion in the alternative for summary judgment should be denied as premature, as plaintiff has not had the opportunity to conduct discovery.

### 3. Qualified Immunity

Defendants assert that defendant Dr. Francin is entitled to qualified immunity in this case. The doctrine of qualified immunity "shields government officials from liability for damages on account of their performance of discretionary official functions 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Rodriguez v. Phillips, 66 F.3d 470, 475 (2d Cir. 1995) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "A government official is entitled to qualified immunity from suit for actions taken as a government official if: (1) the conduct attributed to the official is not prohibited by federal law, constitutional or otherwise; (2) the plaintiff's right not to be subjected to such conduct by the official was not clearly established at the time of the conduct; or 3) the official's action was objectively legally reasonable in light of the legal rules that were clearly established at the time it was taken." Cuoco v. Moritsugo, 222 F.3d 99, 109 (2d Cir. 2000); Horne v. Coughlin, 155 F.3d 26, 29 (2d Cir. 1998). "The question is not what a lawyer

19

would learn or intuit from researching case law, but what a reasonable person in the defendant's position should know about the constitutionality of the conduct." McCullough v. Wyandanch Union Free Sch., 187 F.3d 272, 278 (2d Cir. 1999).

If plaintiff can establish that defendant Francin was deliberately indifferent to his serious medical needs, plaintiff's rights were well established at the time he was under Dr. Francin's care at MDC. In this case, it is undisputed that plaintiff complained on numerous occasions about his worsening back condition. Accordingly, defendants' motion to dismiss the claims against Dr. Francin based on qualified immunity should be denied.

D.    Federal Tort Claims Act

To the extent that plaintiff's complaint raises a claim under the Federal Tort Claims Act (the "FTCA"), defendants' motion should be granted and the claim should be dismissed. Defendants argue that plaintiff failed to timely file this action and, thus, any claim under the FTCA is time-barred. See Def. Mem. at 19-22.

Title 28 U.S.C. § 2401(b) provides:

"A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues *or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.*"

McNeil v. United States, 508 U.S. 106, 111 (1993) (emphasis added). Unlike exhaustion under the PLRA, exhaustion under the FTCA is jurisdictional. If a claimant institutes a FTCA action in federal court more than six months after the notice of final denial is mailed by the agency, the Court lacks subject matter jurisdiction to adjudicate the action. Johnson v. Smithsonian Inst., 189 F.3d 180, 189 (2d Cir. 1999).

In this case, plaintiff filed an administrative tort claim relating to the incidents at issue in this complaint on May 12, 2003, see Johnson Decl., Ex. C, over two years after the March 26, 2001 incident. As plaintiff in his tort claim complains of a lack of "proper medical attention" not limited to the treatment he received on March 26, 2001, it cannot be said that his claim accrued on that day. Nevertheless, plaintiff failed to file this action within six months of the denial of his tort claim. The Northeast Regional Office of the BOP investigated plaintiff's claim and mailed a notice of denial to plaintiff on May 21, 2003. Id., Ex. D. Thus, plaintiff had until November 21, 2003, six months after the agency denial, to file his FTCA claim in this Court. Plaintiff filed this action in the Southern District of New York on February 11, 2004, almost three months past the deadline. Accordingly, to the extent that plaintiff's complaint raises a claim under the FTCA, the Court lacks subject matter jurisdiction over it and the claim should be dismissed.

## CONCLUSION

Defendants' motion to dismiss plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6) should be granted as to three of plaintiff's claims: his claim against defendant Middleton and his claims regarding his request for both an MRI and an examination by a specialist. Defendants' motion to dismiss plaintiff's complaint under the Federal Tort Claims Act should also be granted. In all other respects, defendants' motion to dismiss or for summary judgment should be denied as premature as the parties have not had an opportunity to conduct discovery.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the ten-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physician's Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Sec'y of Health and Human Services, 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED.

LOIS BLOOM
United States Magistrate Judge

Dated: September 8, 2006
       Brooklyn, New York

Copies to:

THE HONORABLE JOHN GLEESON
United States District Judge

ELIAS NUNEZ, Pro Se Plaintiff
#45049-054
FMC Devens
P.O. Box 879
Ayer, MA 01432

LAURA D. MANTELL
United States Attorney
Eastern District of New York
147 Pierrepont Street, 14th Floor
Brooklyn, NY 11201

22